UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80507-CIV-MARRA

BRANCH BANKING AND TRUST COMPANY,
a North Carolina banking corporation, successor-in-
interest to Colonial Bank by Asset Acquisition from
the FDIC as Receiver for Colonial Bank,

      Plaintiff,

v.

HAMILTON GREENS, LLC, a Florida limited
liability company, DEVCON LIVINGSTON
GREENS, LLC, a Florida limited liability company,
BLG ENTERPRISES, LLC, a Florida limited
liability company, RICHARD BELLINGER,
individually, CHAD LABONTE, individually, and
ROLAND LABONTE, individually,

      Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Plaintiff Branch Banking and Trust Company's Amended

Motion for Final Summary Judgment with Supporting Memorandum of Law (DE 196).[1] Defendant

Richard Bellinger responded. (DE 197). Plaintiff replied. (DE 202). The Court has considered the

briefs of the parties and the record, and is otherwise advised in the premises.

## I. Background

The relevant facts are undisputed. On September 1, 2006, Hamilton Greens, LLC ("Hamilton

Greens"), Defendant Richard Bellinger ("Defendant" or "Bellinger"), Chad Labonte, Roland Labonte,

and others entered into an agreement with Colonial Bank to secure a $3,375,000.00 acquisition loan

---

[1] Plaintiff moves for summary judgment against Defendant Richard Bellinger only.

for real property. (DE 196, Attach. 1 at 34). Bellinger and the Labontes were managers of Hamilton

Greens.

Hamilton Greens executed a promissory note on the loan on September 5, 2006 (DE 196,

Attach. 1 at 26), and Bellinger executed a continuing and unconditional guaranty on the loan that

same day (DE 196, Attach. 1 at 57). The relevant portions of the guaranty provide as follows:

> NOW, THEREFORE, in consideration of the Lender's making the Loan and accepting the Note, Mortgage and related documents, which it is acknowledged and agreed that Lender is doing in full reliance hereon, and as an inducement to Lender to do so and to make advances pursuant thereto, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Guarantor hereby *irrevocably* covenants, warrants and agrees as follows:

> 1. That notwithstanding any provision in the Note, Mortgage or in any other agreement or document, Guarantor hereby unconditionally and *irrevocably* guarantees to Lender the full payment when due, by acceleration or otherwise, and performance of, any and all Liabilities, as described herein of the Borrower to Lender. ***The term "Liability" or "Liabilities" as used herein shall include,*** without limitation, (i) any and all liabilities and obligations of Borrower to Lender as evidenced by the Note, and any and all indemnifications set forth in the Note, or any other document executed by Borrower in favor of Lender; (ii) every promise or undertaking of the Borrower to repay loans heretofore, now or hereafter made to the Borrower by the Lender and all interest and other charges thereon; (iii) ***every other instrument now or hereafter evidencing the obligation of the Borrower under any other agreement executed in connection with the Note or any amendment, renewal or extension thereof***; (iv) every mortgage or other security agreement now or hereafter in effect securing payment of any or all of the foregoing Liabilities or any amendment, renewal or extension thereof; and (v) all obligations of the Guarantor hereunder, however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due or to become due, or which may be herein or hereafter contracted or acquired, or incurred directly or indirectly in respect thereof; and all extensions or renewals thereof and all sums payable under or by virtue thereof including, without limitation, all amounts of principal and interest and all expenses (including attorney's fees and costs of collection as specified therein) incurred in the collection thereof or the enforcement of rights thereunder, whether arising in the ordinary course of business or otherwise, and whether held or to be held by Lender for its own account or as agent for another or others. The term Liabilities as used herein shall include all liabilities of any successor entity or entities of Borrower to Lender, unless Guarantor and Borrower are released pursuant to the Note.

2

*It is expressly understood and agreed that this is a continuing guaranty* and that the obligations of the Guarantor hereunder are and shall be absolute under any and all circumstances including, but not limited to, the foreclosure of the Mortgage. The Guarantor acknowledges having received, reviewed and approved the Note, Mortgage and related documents referred to herein.

2. *Lender may at any time and from time to time (whether before or after revocation or termination of this Guaranty)* without notice to the Guarantor (except as required by law), without incurring responsibility to the Guarantor, without impairing, releasing or otherwise affecting the obligations of the Guarantor in whole or in part and without the endorsement or execution by the Guarantor of any additional consent, waiver or guaranty: (a) *change the manner, place or terms of payment, and change or extend the time of or renew or alter, any Liability or installment thereof,* or any security therefor, and may loan additional monies or extend additional credit to Borrower, with or without security, *thereby creating new Liabilities the payment of which shall be guaranteed hereunder, and the guaranty herein made shall apply to the Liabilities as so changed, extended, renewed, increased or otherwise altered . . . .*

\*   \*   \*

4. *Guarantor further agrees that it shall not be released from Guarantor's obligations hereunder by reason of any amendment to or alteration of the terms and conditions of the Note or any related Loan document or the indebtedness arising thereunder, nor shall Guarantor's obligations hereunder be altered or impaired by any delay by Lender in enforcing the terms and obligations of the Note or any other document evidencing or securing the Loan or by any waiver of any default by Lender under the Note or any related Loan document, it being the intention that Guarantor shall remain fully liable hereunder, notwithstanding any such event.*

5. *No extension of the time of payment or performance of any obligation hereunder guaranteed, or the renewal thereof, nor delay in the enforcement thereof or of this Guaranty, or the taking, exchanging, surrender or release of other security therefor or the release or compromise of any liability of any party shall affect the liability of or in any manner release the Guarantor, and this Guaranty shall be a continuing one and remain in full force and effect until each and every obligation hereby guaranteed shall have been fully paid and performed.*

6. *That until the Guarantor is released as hereinbefore described, Guarantor shall not be released* by any act or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of Guarantor, or *by reason of any waiver, extension, modification, forbearance or delay by Lender, or Lender's failure to proceed promptly or otherwise, or by reason of any further obligation or agreement between any owner of the Property and the then holder of the Note secured thereby relating to the payment of any sum secured thereby or to any of the*

3

*other terms, covenants and conditions contained therein, and Guarantor hereby expressly waives and surrenders any defense to Guarantor's liability hereunder based upon any of the foregoing acts, things, agreements or waivers. . . .*

7. *Lender shall not be required to give any notice to Guarantor hereunder in order to preserve or enforce Lender's rights hereunder (including, without limitation, notice of any default under or amendment to the Note* or other documents evidencing or securing the loan made thereunder), any such notice being expressly waived by Guarantor. Upon the occurrence of a default under the Note, or any related document, and expiration of applicable grace period, Lender is hereby authorized, at any time and from time to time, without notice to Guarantor or to any other person, any such notice being hereby expressly waived, to immediately set off, appropriate and apply any and all deposits (general or special) and any other indebtedness at any time held or owing by Lender to or for the credit or the account of Guarantor against and on account of the obligations and liabilities of Guarantor hereunder, except trust or agency accounts. Notwithstanding any payment or payments hereunder or any such set-off, appropriation or application, until such time as all amounts owing to Lender have been paid in full, Guarantor shall not be subrogated to any of the rights of Lender against Borrower under the Note, or any other Loan document, or as to the security for the Loan, or entitled to a tender, redelivery or reassignment of the Note, or any other collateral security given for the Loan.

8. Guarantor agrees that is shall make no claim or set-off, defense, recoupment or counterclaim of any sort whatsoever, nor shall Guarantor seek to impair, limit or defeat in any way its obligation hereunder. Guarantor hereby waives any right to such a claim in limitation of their obligations hereunder. Guarantor expressly waives any defense based upon any election of remedies of Lender, which destroys or otherwise impairs the subrogation rights of the Guarantor or the right of the Guarantor to proceed against the Borrower for reimbursement, or both, or upon failure by Lender (which shall have no duty in that regard) to inform the Guarantor of any facts it may now or hereafter know about the Borrower, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which the Guarantor intends to assume or has reason to believe that such facts are unknown to the Guarantor or has a reasonable opportunity to communicate such facts to the Guarantor, it being understood that the Guarantor are [sic] fully responsible for being and keeping informed of the financial condition of the Borrower and of all circumstances bearing on the risk of performance hereby guaranteed.

\*   \*   \*

17. Guarantor agrees that no delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude other or further exercise thereof or the exercise

4

of any other right or remedy; nor shall any modification or waiver of any of the provisions of this Guaranty be binding upon Lender except as expressly set forth in writing duly signed and delivered on behalf of Lender. No action of Lender permitted hereunder shall in any way affect or impair the rights of Lender and the obligation of the Guarantor under this Guaranty. This Guaranty shall be enforceable, notwithstanding any right or power of the Borrower or anyone else to assert any claim or defense as to the invalidity or unenforceability of any obligation, and no such claim or defense shall affect or impair the obligations of the Guarantor hereunder.

18. Lender shall not be bound to take any steps necessary to preserve any rights in any of the Property of the Guarantor against prior parties who may be liable in connection therewith, and the Guarantor hereby agrees to take any such steps. ***Lender may nevertheless at any time after Borrower's or Guarantor's default and after expiration of applicable grace periods***: (a) take any action it may deem appropriate for the care or preservation of such property or of any rights of the Guarantor or Lender therein, (b) demand, sue for, collect or receive any money or property at any time due, payable or receivable on account of or in exchange for any property of the Guarantor, (c) compromise and settle with any person liable on such Property, or (d) ***extend the time of payment or otherwise change the terms thereof as to any party liable thereon, all without notice to, without incurring responsibility to, and without affecting any of the obligations of the Guarantor.***

\* \* \*

24. This Guaranty shall, in all respects, be governed by and construed in accordance with the laws of the State of Florida, including all matters of construction, validity and performance. . . .

(DE 196, Attach. 1) (emphasis added).

On August 31, 2007, Bellinger entered into an agreement with the Labontes to transfer all of his interests in Hamilton Greens to them in exchange for their personal indemnification and best efforts to have him removed from the Colonial Bank guaranty. (DE 42, Bellinger Aff. ¶ 8). Consistent with this agreement, the Labontes requested that Colonial Bank release Bellinger as a guarantor. (DE 196, Attach. 2, Wilkinson Aff. ¶¶ 5–6). Colonial denied the request. (DE 196, Attach. 2, Wilkinson Aff. ¶ 6).

In March 2008, upon Hamilton Greens' request, Colonial extended the maturity date of the

5

original promissory note through a Commercial Loan Extension Agreement and Renewal Promissory Note. (DE 1, Attach. 8 at 32; DE 196, Attach. 1 at 19). The  Renewal Promissory Note renewed and replaced the original note, as amended by the Commercial Loan Extension Agreement, in its entirety.

In June and July of 2008, upon Hamilton Greens' request, Colonial extended the maturity date of the Renewal Promissory Note through a Mortgage, Note and Loan Documents Modification Agreement and Second Renewal Promissory Note. (DE 1, Attach. 8 at 41; DE 196 Attach. 1 at 12). The Second Renewal Promissory Note renewed and replaced the Renewal Promissory Note in its entirety.

In March, June, and July of 2009, upon Hamilton Greens' request, Colonial extended the maturity date of the Second Renewal Promissory Note through another Commercial Loan Extension Agreement, a Second Mortgage, Note and Loan Documents Modification Agreement, and a Third Renewal Promissory Note. (DE 1, Attach. 8 at 58; DE 1, Attach. 9 at 1; DE 196, Attach. 1 at 5). The Third Renewal Promissory Note renewed and replaced the Second Renewal Promissory Note in its entirety. [2]

All notes and loan agreements described above are now held by Plaintiff Branch Banking & Trust Company ("Plaintiff" or "BB&T") as successor to Colonial Bank, by asset acquisition from the FDIC, as receiver for Colonial Bank. On March 25, 2011, BB&T advised Hamilton Greens that its loan was in default for failure to make payments (DE 196, Attach. 1 at 69), and BB&T declared an acceleration of the loan obligations after Hamilton Greens failed to pay (DE 196, Attach. 1 at 72). Thus, according to BB&T, Hamilton Greens owes $3,330,232.69 as of May 2, 2011 not including

---

[2] Colonial knew that Bellinger no longer had an interest in Hamilton Greens and would not sign any new loan renewals in the Fall of 2007—before any of the promissory note renewals.  (DE 196, Attach. 2, Wilkinson Aff. ¶ 6). Nevertheless, Colonial renewed the notes without notifying Bellinger or receiving his consent or signature.

certain fees, costs, and additional interest. (DE 1 ¶ 46).

BB&T alleges that Bellinger unconditionally guaranteed to repay all of Hamilton Greens' debt and that Bellinger's failure to pay constitutes a breach of the guaranty contract. (DE 1 ¶¶ 65–71). To that end, BB&T moves for summary judgment against Bellinger because the terms and conditions of Bellinger's guaranty dictate that he is liable for Hamilton Greens' debt and because Bellinger's affirmative defenses—waiver, estoppel, and failure to mitigate—do not preclude entry of summary judgment in BB&T's favor. For the reasons that follow, BB&T's motion for summary judgment is granted.

## II. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

### III. Analysis

The terms of the guaranty contract between Bellinger and BB&T provide that the "[g]uaranty shall, in all respects, be governed by and construed in accordance with the laws of the State of Florida, including all matters of construction, validity and performance. . . ." (DE 196, Attach. 1 ¶ 24). In Florida, "a continuing guaranty remains in effect until revoked . . . [and] covers all transactions, including those arising in the future, which are within the . . . contemplation of the agreement." *Causeway Lumber Co. v. King*, 502 So. 2d 80, 81 (Fla. Dist. Ct. App. 1987) (citing *Brann v. Flagship Bank of Pinellas, N.A.*, 450 So. 2d 237 (Fla. Dist. Ct. App. 1984) and *Fidelity Nat'l Bank of S. Miami v. Melo*, 366 So. 2d 1218, 1221 (Fla. Dist. Ct. App. 1979)). Thus, "[a] guarantor is bound by an

agreement in the guaranty contract which permits extensions of time for performance of the principal contract, and when the guaranty agreement expressly authorizes such extensions, an extension of time within the contemplation of the agreement does not discharge the guarantor." *Champion Home Builders, Inc. v. Highridge Sales, Inc.*, 472 So. 2d 836, 837 (Fla. Dist. Ct. App. 1985) (citations omitted). Moreover, "under a continuing guaranty, in the absence of an express contractual provision to the contrary . . . the creditor has no obligation to notify the guarantor regarding its transaction with the principal debtor." *Causeway Lumber Co.*, 502 So. 2d at 82 (citations omitted). "[A] guarantor is released," however, "where the creditor materially alters the principal debtor's obligation to the detriment of the guarantor without the guarantor's consent." *Miami Nat'l Bank v. Fink*, 174 So. 2d 38 (Fla. Dist. Ct. App. 1965).

Here, BB&T's position is straightforward: Bellinger signed an absolute and unconditional guaranty to repay the full indebtedness due and owing from Hamilton Greens to BB&T, Hamilton Greens defaulted, and that default entitles BB&T to enforce the terms and conditions of Bellinger's guaranty. In response, Bellinger first argues that BB&T waived its ability to enforce the guaranty by materially modifying the loan agreement through extensions of the loan's maturity date post-notice of Bellinger's withdrawal as a guarantor.[3] Second, Bellinger argues that BB&T should be estopped from enforcing the terms of his guaranty because he justifiably and detrimentally relied on BB&T's material misrepresentation that the repayment deadline in the original loan agreement and guaranty would not be altered.[4] Finally, Bellinger argues that BB&T's failure to mitigate its damages—i.e.,

---

[3] It is undisputed that no additional principal was advanced by BB&T's predecessor at the time of these extensions.

[4] Bellinger's allegation of misrepresentation is based on nothing more than his inference that BB&T would not modify the loan or extend its maturity date because the original loan agreement and guaranty specified a repayment deadline. In other words, the only representation upon which Bellinger relies is the date specified in the original loan

BB&T's failure to enforce the loan agreement as originally written at a time when, according to Bellinger, the value of the property would have covered a default on the loan—precludes the entry of summary judgment.

All three of Bellinger's affirmative defenses fail as a matter of law. "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *Florida v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004) (citation omitted). The three elements of waiver are "(1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right. Proof of these elements may be express, or implied from conduct or acts that lead a party to believe a right has been waived." *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. Dist. Ct. App. 2009) (citation omitted).

The basis for Bellinger's estoppel defense is that the repayment deadline contained in the original loan agreement and guaranty was a representation that Bellinger justifiably relied on in expecting that BB&T would not modify the loan due date without his consent. Had BB&T notified Bellinger to get his consent, the argument goes, Bellinger could have insisted that the assets be liquidated at a time when their value could cover the outstanding amount of the loan. Notwithstanding that Bellinger was no longer involved in Hamilton Greens and thus would ostensibly have no say in whether Hamilton Greens' assets could be liquidated, whether Bellinger could control that decision is irrelevant: the clear and express terms of the guaranty give BB&T the right to modify the loan without notifying him, getting his consent, or affecting his continuing liability. (DE 196, Attach. 1

agreement and guaranty.

¶¶ 1, 2, 5, 7) Thus, the mere inclusion of an original repayment deadline of the loan could not be a material misrepresentation because Bellinger contractually agreed to let BB&T extend that deadline without his involvement and without affecting his continuing obligations as guarantor. Moreover, Bellinger could not justifiably rely on the original due date as a material representation and expect that BB&T would not modify that date without his consent *when he contractually agreed otherwise.* Bellinger's estoppel defense thus necessarily fails as a matter of law based on the clear and unambiguous terms of the guaranty.

To determine whether BB&T waived its right to enforce Bellinger's guaranty under Florida law, the Court turns to *Miami National Bank v. First International Realty Investment Corporation et al.*, 364 So. 2d 873 (Fla. Dist. Ct. App. 1978), a case at the heart of the parties' dispute over the enforceability of the guaranty. In *Miami National Bank*, a borrower executed a 90-day promissory note on a $50,000.00 one-year loan from the appellant lender. An individual guarantor personally guaranteed the note, which was renewable every 90 days so that the lender could review the borrower and guarantor's financial condition.

After the first two 90-day notes were executed, the individual guarantor notified the lender both orally and in writing that he was revoking his guaranty. A third 90-day note was executed. Before the fourth 90-day note was executed, however, the lender requested an update from the guarantor on his financial status. The guarantor responded in writing that he already notified the lender of his revocation, but the lender executed the fourth note anyway.

When the borrower defaulted on the fourth note, the lender filed suit to enforce the personal guaranty. The trial court granted summary judgment in favor of the guarantor because he "communicated the revocation of his personal guaranty to the [lender] which subsequently removed

his name from the list of personal guarantors." In a two-paragraph *per curiam* opinion citing no relevant legal support and providing no legal reasoning, the appellate court affirmed.

Bellinger cites *Miami National Bank* for the proposition that a lender may not rely upon a guaranty beyond the maturity date of the loan if, before the renewal, the lender has been notified of the guarantor's withdrawal. This Court does not adopt Bellinger's expansive interpretation of the *Miami National Bank* decision.[5]

As a threshold matter, unlike in *Miami National Bank*, Bellinger has provided no evidence that he notified BB&T that he was revoking his guaranty. While Bellinger has provided evidence that he entered into an agreement to transfer all of his interests in Hamilton Greens to the Labontes in exchange for their personal indemnification and *best efforts* to have him released from the guaranty, BB&T has countered with evidence that the request that Bellinger be released was rejected. (DE 196, Attach. 2, Wilkinson Aff. ¶ 6); *see also Sanz v. Prof'l Underwriters Ins. Agency*, 560 So. 2d 1254, 1254 (Fla. Dist. Ct. App. 1990) ("The termination of an interest in a corporation, in and of itself, does not also terminate liability under a separate personal guaranty agreement unless the termination provisions of the agreement are complied with.") (citing *Kerr-McGee Chem. Corp. v. CHB Farms, Inc.*, 340 So. 2d 483 (Fla. Dist. Ct. App. 1976)). BB&T's rejection of the attempt to release Bellinger provides support for distinguishing *Miami National Bank*, where the lender ostensibly recognized the guarantor's revocation by removing him from the list of guarantors. Bellinger's suggestion that

---

[5] The Court recognizes that "[t]here is a split in case law as to whether a guarantor is released from liability if, after revocation of a continuing guaranty, a bank makes further extensions or renewals without the consent of the guarantor." *Fed. Deposit Ins. Corp. v. Moore*, 879 P.2d 78, 80 (N.M. 1994) (collecting sources). The Court need not decide whether Bellinger's conduct in this case constituted a valid revocation because, even assuming he did revoke, that revocation does not absolve him of liability on the guaranty. As detailed below, Florida law dictates that—at least in situations where the express terms of the guaranty are clear and unambiguous—guarantors are responsible for renewals made after revocation.

BB&T's subsequent conduct in this case shows recognition of a revocation is unavailing: consistent with the terms of the guaranty, BB&T was under no obligation to: 1) accept Bellinger's request for a release, revocation or withdrawal; 2) contact him about the renewals; 3) secure his signature on the loan renewals; 4) ask him to execute new guaranties, or 5) receive his consent to renew the loan. As set forth in the operative document, Bellinger agreed to "unconditionally and irrevocably" guaranty to BB&T the full payment when due, by acceleration or otherwise, and performance of, any instrument evidencing the obligation of Hamilton Greens under any other agreement executed in connection with the promissory note *or any amendment, renewal or extension thereof.* (DE 196, Attach. 1 ¶ 1). Bellinger further agreed as follows:

> 2. *Lender may at any time and from time to time (whether before or after revocation or termination of this Guaranty)* without notice to the Guarantor (except as required by law), without incurring responsibility to the Guarantor, without impairing, releasing or otherwise affecting the obligations of the Guarantor in whole or in part and without the endorsement or execution by the Guarantor of any additional consent, waiver or guaranty: (a) *change the manner, place or terms of payment, and change or extend the time of or renew or alter, any Liability or installment thereof,* or any security therefor, and may loan additional monies or extend additional credit to Borrower, with or without security, *thereby creating new Liabilities the payment of which shall be guaranteed hereunder, and the guaranty herein made shall apply to the Liabilities as so changed, extended, renewed, increased or otherwise altered . . . .*

> 4. *Guarantor further agrees that it shall not be released from Guarantor's obligations hereunder by reason of any amendment to or alteration of the terms and conditions of the Note or any related Loan document or the indebtedness arising thereunder, nor shall Guarantor's obligations hereunder be altered or impaired by any delay by Lender in enforcing the terms and obligations of the Note or any other document evidencing or securing the Loan or by any waiver of any default by Lender under the Note or any related Loan document, it being the intention that Guarantor shall remain fully liable hereunder, notwithstanding any such event.*

> 5. *No extension of the time of payment or performance of any obligation hereunder guaranteed, or the renewal thereof, nor delay in the enforcement thereof or of this Guaranty, or the taking, exchanging, surrender or release of other security therefor or the release or compromise of any liability of any party shall affect the liability of*

13

*or in any manner release the Guarantor, and this Guaranty shall be a continuing one and remain in full force and effect until each and every obligation hereby guaranteed shall have been fully paid and performed.*

6. *That until the Guarantor is released as hereinbefore described, Guarantor shall not be released* by any act or thing which might, but for this provision of this Guaranty, be deemed a legal or equitable discharge of Guarantor, or by reason of any waiver, extension, modification, forbearance or delay by Lender, or Lender's failure to proceed promptly or otherwise, *or by reason of any further obligation or agreement between any owner of the Property and the then holder of the Note secured thereby relating to the payment of any sum secured thereby or to any of the other terms, covenants and conditions contained therein, and Guarantor hereby expressly waives and surrenders any defense to Guarantor's liability hereunder based upon any of the foregoing acts, things, agreements or waivers.*

7. *Lender shall not be required to give any notice to Guarantor hereunder in order to preserve or enforce Lender's rights hereunder (including, without limitation, notice of any default under or amendment to the Note* or other documents evidencing or securing the loan made thereunder), any such notice being expressly waived by Guarantor. Upon the occurrence of a default under the Note, or any related document, and expiration of applicable grace period, Lender is hereby authorized, at any time and from time to time, without notice to Guarantor or to any other person, any such notice being hereby expressly waived, to immediately set off, appropriate and apply any and all deposits (general or special) and any other indebtedness at any time held or owing by Lender to or for the credit or the account of Guarantor against and on account of the obligations and liabilities of Guarantor hereunder, except trust or agency accounts. Notwithstanding any payment or payments hereunder or any such set-off, appropriation or application, until such time as all amounts owing to Lender have been paid in full, Guarantor shall not be subrogated to any of the rights of Lender against Borrower under the Note, or any other Loan document, or as to the security for the Loan, or entitled to a tender, redelivery or reassignment of the Note, or any other collateral security given for the Loan.

(DE 196, Attach. 1 ¶¶ 2, 4, 5, 6, 7)(emphasis added). Bellinger's waiver argument consequently fails because, based on the plain and unambiguous language of the guaranty, and based on the lack of any record evidence indicating that BB&T intend to relinquish its right to enforce Bellinger's guaranty.

The decision of *Broward Bank v. Southeastern X-ray Corp.*, 463 So. 2d 440 (Fla. Dist. Ct. App. 1985), gives further support to the Court's conclusion that Bellinger's attempted revocation does not relieve him of liability on the guaranty. In *Broward Bank*, the borrower executed a promissory

14

note on a $50,000.00 loan from the bank. An individual guarantor personally guaranteed the note. Subsequently three renewal notes that extended the time for payment of the original obligation were executed by the borrower.

Before execution of the third renewal, the guarantor requested that his name be removed as guarantor, and the bank replied that "liability for the existing loan . . . would continue until the loan was paid, but future loans would be considered without his guaranty." *Id.* at 441. After execution of the third renewal, the borrower defaulted and the bank sought to enforce the guaranty.

The issue, as framed by the appellate court, was "whether the renewal notes were mere extensions of the time for payment of the original . . . loan, or whether each renewal should be construed as evidencing payment in full of each prior loan and the making of a new loan." *Id.* Adopting the reasoning of the Utah Supreme Court in *Marking Systems, Inc. v Interwest Film Corp.*, 567 P.2d 176 (Utah 1977), the *Broward Bank* court held that the guarantor's liability

> as guarantor of a promissory note in existence on the date of his notice to the [bank] of termination of his contract of guarantee is not affected by that termination *because of the clear and unambiguous terms of the guarantee agreement.* Extensions of time for repayment given the [borrower] by the [bank], also expressly contemplated by the agreement, are similarly ineffectual to absolve the guarantors of liability. Finally, utilizing the device of a renewal promissory note simply to evidence such an extension of time does not change the result.

*Broward Bank*, 463 So. 2d at 441 (emphasis added). The "clear and unambiguous terms" of the unconditional, continuing guarantee that the court relied on provided as follows:

> This guarantee shall secure all liabilities which the Customer may incur or come under up to and inclusive of the expiration of one month after notice of revocation hereof shall have been given to the Bank in writing, signed by the undersigned. Provided always that the undersigned may in any manner aforesaid determine his future liability

15

under this guarantee by notice in writing to be given to the Bank.[6]

As set forth above, the guarantee at issue here—which, unlike the guarantee *in Broward Bank*, does not expressly allow for revocation by the guarantor—provides in terms even more express and unambiguous that whether Bellinger revoked or withdrew his personal guaranty is irrelevant: Bellinger remains liable on the guaranty notwithstanding that he was never contacted about the renewals, never executed new guaranties, and never consented to the loan renewals. Bellinger contractually agreed to remain liable.

Bellinger's mitigation-of-damages defense fails on similar grounds. BB&T was under no contractual duty to mitigate, to enforce the loan agreement as originally written thereby "squandering" an opportunity to avoid damages, or to notify Bellinger of the loan modifications which, if revealed (according to Bellinger), "would have set into motion a process preventing the loan extensions, forcing the liquidation of the asset at a time that the market was still robust, securing the repayment of the loan in full, and avoiding this action altogether." (DE 197 at 13). The crux of Bellinger's position regarding mitigation appears to be that BB&T should bear the loss of Hamilton Greens' default because BB&T could have refused to extend the maturity date of the loan and thereby forced an earlier default when the value of the property would have covered the loan. Bellinger's argument misses the point: BB&T could have refused to extend the maturity date of the loan *if it chose to*; but it had no obligation to do so. In fact, BB&T's decision to honor Hamilton Greens' requested extension of the maturity date is consistent with the actions of a lender giving a borrower every

---

[6] Significantly, in reaching its conclusion, the *Broward Bank* court distinguished *Miami National Bank* on grounds present here: First, unlike in *Miami National Bank*, there was no evidence in *Broward Bank* (and there is no evidence here) "that the bank reviewed the parties' financial condition other than at the time of the original loan," *Broward Bank*, 463 So. 2d at 442, a procedure that would have been consistent with the issuance of a new loan as opposed to a mere renewal; Second, unlike in *Miami National Bank*, there was no evidence in *Broward Bank* (and there is no evidence here) that "the bank removed the [guarantor's] name from its list of guarantors." *Id.*

16

opportunity to succeed in its venture. Bellinger would have the Court penalize BB&T for not seeking a borrower's default.

<u>**Conclusion**</u>

The relevant facts in this case are undisputed. At the heart of Bellinger's position in this case is the notion that, as a matter of law, it is fundamentally unfair to seek liability against a guarantor for a renewal note entered into after the guarantor seeks to withdraw the guaranty. Here, however, Bellinger guaranteed that he would pay Hamilton Greens' debt in clear and unambiguous terms. He did not. Bellinger's refusal to pay the debt that he guaranteed warrants the entry of summary judgment against him as a matter of law.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Branch Banking and Trust Company's Amended Motion for Final Summary Judgment with Supporting Memorandum of Law (DE 196) is **GRANTED.** Unless the parties can agree to the amount owed by Bellinger pursuant to the guaranty, that determination will be made at trial.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of April, 2013.

KENNETH A. MARRA
United States District Judge