UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80507-CIV-MARRA/MATTHEWMAN

BRANCH BANKING AND TRUST COMPANY,

Plaintiff,

vs.

HAMILTON GREENS, LLC, et al.,

Defendants

and

MAUREEN DONNELLY,

Defendant in Proceedings Supplementary.
_____/

**OPINION AND ORDER**

This matter is before the Court upon the Magistrate Judge's Report and Recommendation on Branch Banking and Trust Company's Complaint in Proceedings Supplementary (DE 394). Plaintiff filed objections. (DE 395). The Magistrate's Report and Recommendation (DE 394) thoroughly recites the background of this case and applicable legal principles, so the Court writes only to address Plaintiff's specific objections.

**I. Objection Regarding Additional Judgment Against Defendant Richard Bellinger**

First, there is no basis for Plaintiff's objection regarding an additional judgment against Defendant Richard Bellinger because the Magistrate actually recommended the relief that Plaintiff seeks in this regard. The Magistrate held that Plaintiff should not be granted an additional, *monetary* judgment against Bellinger for the amount of the fraudulent conveyance, (DE 394 at 40–41), and Plaintiff does not object to this recommendation. Instead, Plaintiff misreads the Report and

Recommendation and objects to the Magistrate's supposed refusal to recommend the grant of an additional, *non-monetary* judgment against Bellinger.[1] The Magistrate, however, actually recommended such an additional judgment against Bellinger. Specifically, the Magistrate found Bellinger to have engaged in a fraudulent transfer, held that Plaintiff was entitled to reasonable attorneys' fees and costs from Bellinger, and recommended an injunction against Bellinger. Plaintiff essentially objects to not receiving relief that it actually received. As the Magistrate recommended an additional judgment against Bellinger, Plaintiff's objection is moot.

## II. Objection Regarding Creation of the Trust and Initial Transfer to the Trust

Second, the Court need not consider Plaintiff's objections to the Magistrate's conclusions regarding Bellinger's creation of, and transfer of funds to, the Trust. Even if these objections were meritorious and the transfer to the Trust was fraudulent, the outcome would be the same because, as the Magistrate noted, Plaintiff's complaint is devoid of any request for relief as to this transfer. (DE 394 at 14–15) (noting that "BB&T's Complaint does not sufficiently seek any relief as to the initial creation of the Trust in 2011 and the transfer of assets to the Trust in 2012"). Indeed, the Trust, the recipient of the alleged fraudulent transfer, is not even a party in this suit. Tellingly, Plaintiff fails to address this threshold issue in its objections.

## III. Objection Regarding Judgment Against Impleader-Defendant Maureen Donnelly

Turning to Plaintiff's final objection, the Court finds some merit in Plaintiff's objection regarding its request for a judgment against Impleader-Defendant Maureen Donnelly for moneys beyond the specific funds fraudulently transferred to her. While the Court disagrees that under the

---

[1] Defendant Bellinger in turn misreads Plaintiff's objection as seeking an additional *monetary* judgment for the amount of the fraudulent conveyance. (DE 396 at 7.) Plaintiff's objection is clearly limited to seeking an additional, *non-monetary* judgment. (DE 395 at 14.)

facts of this case it has ancillary jurisdiction[2] to award Plaintiff a judgment against Donnelly equivalent to the full amount of the funds fraudulently transferred to her, the Court agrees that Plaintiff is entitled to more than merely the specific funds remaining in Donnelly's possession.

The Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock v. Thomas*, 516 U.S. 349, 357 (1996). The Eleventh Circuit has held that a federal court's ancillary jurisdiction also extends to post-judgment avoidance of fraudulent transfers. *Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783, 787 (11th Cir. 2015).

A federal court's ancillary jurisdiction does not extend, however, to "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock*, 516 U.S. at 357. To the extent a judgment-creditor seeks to make a third party "answerable for the judgment already obtained," the Court lacks ancillary jurisdiction. *Id.* at 358 (quoting *H.C. Cook Co. v. Beecher*, 217 U.S. 497, 498–99 (1910)). "In short, *Peacock* holds that ancillary jurisdiction does not extend to suits demanding that a third party use its legitimately held assets to satisfy a previously rendered judgment." *Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 12–13 (3d Cir. 2008).

In his Report and Recommendation, the Magistrate expressed concerns regarding whether the Court would exceed its ancillary jurisdiction if it entered a monetary judgment against Donnelly for moneys beyond the specific funds fraudulently transferred to her and still in her possession. (DE

---

[2] Ancillary jurisdiction is the only asserted basis for these proceedings. The Court expresses no opinion on whether a broader remedy than that awarded here could be awarded in a new fraudulent conveyance action with an independent basis for jurisdiction.

394 at 42.) In *Straub*, the Eleventh Circuit affirmed a judgment entered against a transferee of a fraudulent conveyance as a proper exercise of the district court's ancillary jurisdiction. 776 F.3d at 787. The Eleventh Circuit explained:

> In contrast with *Peacock*, the district court had ancillary jurisdiction over this supplementary proceeding because National Maritime sought to disgorge Straub of a fraudulently transferred asset, not to impose liability for a judgment on a third party. Unlike the defendant in *Peacock*, Straub is not personally liable for the judgment against Burrell Shipping. Straub's liability is limited instead to the proceeds that Burrell Shipping fraudulently transferred to him. If the value of the transferred proceeds was less than the value of the judgment against Burrell Shipping, National Maritime would have no recourse against Straub for the excess amount. The claim asserted by National Maritime is not "a new lawsuit [that] impose[s] liability for a judgment on a third party."

*Id.* (alterations in original) (citation omitted).

The statement in *Straub* that the transferee's "liability is limited instead to the proceeds that [the judgment-debtor] fraudulently transferred to him" is ambiguous. It could be interpreted to imply that a court's ancillary jurisdiction extends to awarding a monetary judgment only for the specific fraudulently transferred funds (and traceable assets) as opposed to a judgment applicable to the transferee's general assets. On the other hand, the statement could also be interpreted as merely setting the maximum *amount* for which a court has ancillary jurisdiction to hold a third-party transferee liable.

The Court concludes that the latter interpretation of this sentence—that it sets a maximum amount of liability rather than refers to which specific funds to which the judgment may apply—is the better interpretation. First, the next sentence in the Eleventh Circuit's opinion referring to the "value of the transferred proceeds" is consistent with an intention to set a maximum amount rather than a holding that the judgment could apply to only the specific fraudulently transferred funds.

4

Second, the actual judgment entered by the district court and affirmed by the Eleventh Circuit applied to the third-party transferee's general assets and did not distinguish between the transferee's general assets and the specific funds that were fraudulently transferred. *See* Final Judgment, *Nat'l Mar. Servs., Inc. v. Straub*, No. 10-61555-Civ-Altonaga (S.D. Fla. Oct. 24, 2013) (ECF No. 128). Third, the majority did not take issue with the concurrence's description of the court's holding that the judgment-creditor's claim against the third-party transferee "in the supplementary proceeding was limited to the *value* of the fraudulently transferred assets." 776 F.3d at 789 (Jordan, J., concurring) (emphasis added). If that description was incorrect, the majority decision certainly would have said so.

Most significant is the *Straub* court's use of the term of art "disgorge" in its reasoning. The Eleventh Circuit held that the district court did not exceed its ancillary jurisdiction when it entered a monetary judgment against a third-party transferee of a fraudulent transfer "because [the judgment-creditor] sought to *disgorge* [the transferee] of a fraudulently transferred asset, not to impose liability for a judgment on a third party." *Id.* at 787 (majority opinion) (emphasis added). Thus, the Court interprets *Straub* to hold that a court's ancillary jurisdiction to enter a monetary judgment against the third-party recipient of a fraudulent transfer is limited to the relief the Court could award in a disgorgement action. In other words, funds in the possession of a third-party recipient of a fraudulent transfer that are the type of funds that could be awarded in a disgorgement action are assets already subject to the original judgment, and therefore subject to the Court's ancillary jurisdiction.

The remedy of disgorgement is not limited to the specific moneys or other assets wrongfully obtained. Disgorgement "is an equitable obligation to return a sum equal to the amount wrongfully obtained, rather than a requirement to replevy a specific asset." *S.E.C. v. Banner Fund Int'l*, 211 F.3d

5

602, 617 (D.C. Cir. 2000); *see also S.E.C. v. Miller*, 808 F.3d 623, 635–36 (2d Cir. 2015). Indeed, the Supreme Court has repeatedly referred to disgorgement as a remedy broader than return of specific funds or other assets. *See Kaley v. United States*, 134 S. Ct. 1090, 1102 n.12 (2014) (referring to disgorgement of "an equivalent amount" of dissipated funds); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (noting that disgorgement extends to proceeds of an asset already disposed of *and* "the third person's profits derived therefrom"); *Kansas v. Colorado*, No. 105, ORIGINAL, 1997 WL 33796878, at *35–36 (U.S. Sept. 9, 1997) (referring to disgorgement of "ill-gotten gains" and "illegal profits"); *Tull v. United States*, 481 U.S. 412, 424 (1987) (referring to "disgorgement of improper profits").

The purpose of disgorgement is to prevent unjust enrichment, and a court's equitable power of disgorgement extends to property "causally related" to the wrongdoing. *Banner Fund*, 211 F.3d at 617; *see also S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005) (per curiam) (noting that purpose of disgorgement is "to deprive the wrongdoer of his ill-gotten gain"); *S.E.C. v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 102 (2d Cir. 1978) (Friendly, J.) (explaining that disgorgement "is a method of forcing a defendant to give up the amount by which he was unjustly enriched"). The "causally related" requirement "does not imply that a court may order a malefactor to disgorge only the actual property obtained by means of his wrongful act. Rather, the causal connection required is between the amount by which the defendant was unjustly enriched and the amount he can be required to disgorge." *Banner Fund*, 211 F.3d at 617. Thus, disgorgement extends only to the amount, with interest, of unjust enrichment. *S.E.C. v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978).

As noted *supra*, the Court has ancillary jurisdiction to enter a judgment against Donnelly's

general assets only to the extent those assets would be subject to a disgorgement action. In other words, the Court can enter a judgment against Donnelly's general assets only to the extent Donnelly was unjustly enriched by the fraudulent transfers. Such assets cannot be said to be "legitimately held" because, like illegal profits, they are causally related to the fraudulently transferred funds and are subject to the original judgment in the same way assets traceable to tainted funds would be. *Cf. Gambone*, 288 F. App'x at 12–13 ("In short, *Peacock* holds that ancillary jurisdiction does not extend to suits demanding that a third party use its *legitimately held assets* to satisfy a previously rendered judgment." (emphasis added)). To award monetary relief beyond Donnelly's unjust enrichment, however, would exceed the Court's ancillary jurisdiction.

In the typical case, such as *Straub*, the amount fraudulently transferred is equivalent to the amount of unjust enrichment. In such a case, the value of the fraudulent transfers is the limit on the value of the judgment the Court may enter against a third-party transferee when exercising its ancillary jurisdiction. The Court agrees with the Magistrate, however, that this case "is unique because, although the distributions were made to Donnelly, she spent nearly all of the money to pay Bellinger's living expenses." (DE 394 at 41.) Furthermore, Plaintiff points to nothing in the record suggesting that Donnelly would have used her own money to pay Bellinger's living expenses had the Trust distributions not been made to her. Therefore, under the facts of this case, the amount by which Donnelly was unjustly enriched is not equivalent to the amount of funds fraudulently transferred to her.

Here, the Magistrate made a factual finding, which Plaintiff does not contest with any record citations, that the "only benefit Donnelly actually received from the Trust distributions was the payment of her attorney's fees in this litigation." (DE 394 at 42.) Accordingly, in addition to ordering

the return of fraudulently transferred funds remaining in Donnelly's possession, the Court has ancillary jurisdiction to enter a monetary judgment against Donnelly equivalent to the amount of her attorneys' fees in this litigation plus interest, which is the amount Donnelly was unjustly enriched.

Having established that the Court has jurisdiction to enter such a judgment, the Court addresses the non-jurisdictional reasons for the Magistrate's recommendation that the Court decline to award such relief. The Magistrate believed it would be "inequitable and unfair" to enter a judgment against Donnelly for the full amount of the fraudulent transfers. (DE 394 at 42.) The Court disagrees with this statement to the extent it applies to an amount equivalent to Donnelly's attorneys' fees because this amount represents the extent Donnelly was *unjustly* enriched. It is immaterial that Donnelly's legal representation may have also benefitted Bellinger. Bellinger had his own attorneys represent him in this action and Donnelly would have personally had to pay for her legal representation or appear *pro se* if she did not receive the fraudulent transfers. The money Donnelly saved by having the Trust pay her legal expenses was an ill-gotten gain, or unjust enrichment. Furthermore, a complaint may request alternative forms of relief, and a monetary judgment against Donnelly "for the value of the assets transferred" was fairly within the relief requested in the complaint. (DE 293 at 5.)

### IV. Conclusion

Accordingly, for the reasons stated herein and in the Magistrate Judge's Report and Recommendation, and upon independent *de novo* review of the file, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's objections are **OVERRULED IN PART** and **SUSTAINED IN PART**. The Magistrate Judge's Report and Recommendation (DE 394) is **AFFIRMED AND ADOPTED IN PART**. Specifically, the Magistrate Judge's Report and Recommendation is

affirmed except as to the portions regarding the monetary judgment against Impleader-Defendant Maureen Donnelly. In addition to a judgment as to the fraudulently transferred funds in Donnelly's possession, the Court will enter judgment against Donnelly for the amount that she was unjustly enriched (plus interest) by having her legal expenses paid with fraudulently transferred funds.[3]

The Court will enter a final judgment consistent with this order after the parties file documentation sufficient for the Court to determine the amount paid to Donnelly's attorneys in this action. The parties shall **CONFER** either in person or telephonically in attempt to stipulate to this amount. If the parties cannot agree on the amount, each party shall file documentation supporting its view of the correct amount and explaining its basis for disagreement with the opposing party. Such stipulation or other documentation shall be filed within **10 days** of this order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of June, 2016.

_____
KENNETH A. MARRA
UNITED STATES DISTRICT JUDGE

---

[3] To be clear, this order does not affect the actual funds paid to Donnelly's attorneys. Such funds are beyond the scope of the relief requested in the complaint. Rather, Donnelly is liable for an amount equivalent to the amount paid to her attorneys because that is the amount by which she has been unjustly enriched by fraudulently transferred funds.